**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AZARDEN LLC, | No. CV-20-00345-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| David Miller, et al., | |
| Defendants. | |

Pending before the Court is Defendants David Miller and Janelle Miller's ("Defendants") Motion for Summary Judgment (Doc. 54).[1] Plaintiff Azarden LLC ("Plaintiff") filed a Response in Opposition (Doc. 69), and Defendant filed a Reply (Doc. 71). Also pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 61). Defendants filed a Response in Opposition (Doc. 68).[2] Plaintiff did not file a Reply.

**I.   Background[3]**

This case concerns promissory notes ("notes") and corresponding personal guarantees. Plaintiff holds four notes signed by non-party Venture Investment Group, Inc.[4]

---

[1] Defendants requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny Defendants' request for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Defendants Richard Miller and Janell Miller joined Defendants' Response. (Doc. 70).

[3] Unless otherwise noted, the following facts are not in dispute.

[4] Venture has filed a bankruptcy petition, and the automatic stay prevents Plaintiff from

("Venture"), along with the associated continuing guarantees signed by the owners of Venture. (Doc. 69 at 2). On February 14, 2020, Plaintiff filed a Complaint against Defendants David Miller, Janell Miller, Robert Miller, Miriam Miller, Richard Miller, and Janelle Miller as guarantors of the notes under which Plaintiff claims it is owed monies.[5] (Doc. 1).

### i. Loans from First American Fund to Venture

Non-party First American Fund ("FAF"), an Arizona financial services corporation, first provided loans to Venture in 2010. (Doc. 54 at 2). According to Sandra Marko ("Marko"), FAF's Vice President and Secretary, the company would locate "private money lenders," and match them with potential borrowers seeking loans. (*Id.* at 2). These lenders included various investors, private individuals, and pensions. (*Id.* at 3).

Once a match occurred between a private money lender and a borrower, FAF required the borrower to execute a promissory note in favor of FAF. (*Id.*) FAF lent the money to the borrowers and the private money lenders lent the money to FAF. (Doc. 54-1 at 7). FAF's sole source of profit arose from the difference between the higher interest rates it charged the borrowers and the lower interest rates it paid to the private money lenders. (*Id.*) In the event that a borrower did not repay a loan, FAF believed "the risk would be to the private money lender." (*Id.* at 13).

Although FAF borrowed and lent millions of dollars in multiple states for more than three decades, it never registered with the U.S. Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), the State of Arizona, or any other state. (Doc. 54 at 3).

From 2010 to 2016, FAF provided six loans to Venture.[6] (*Id.* at 4–8). Notes in favor of FAF accompanied each of these loans. (*Id.*) Venture was a Pennsylvania corporation whose shareholders included Defendants Robert Miller, Richard Miller, and

---

naming it as a party. (Doc. 1 at 3).

[5] Defendants Robert Miller and Miriam Miller did not respond, and the Clerk accordingly entered default against them. (Doc. 48).

[6] Plaintiff does not seek payment from Defendants on the fifth and sixth notes. (*Id.*)

David Miller. (*Id.* at 4).  By 2016, the loans to Venture totaled just under $2,000,000.  (*Id.* at 9).  Their specific values and dates are listed below:

Note 1: dated June 3, 2010, in the principal amount of $500,000.00;

Note 2: dated March 1, 2012, in the principal amount of $650,000.00;

Note 3: dated April 28, 2014, in the principal amount of $160,000.00;

Note 4: dated November 24, 2014, in the principal amount of $300,000.00.

(Doc. 61 at 22–46).

### ii. FAF's Assignment of Notes to Plaintiff

In 2016, one of the private money lenders threatened to sue FAF for various financial violations.  (Doc. 54 at 9).  Thereafter, in July of 2016, FAF assigned all six of the Venture notes to Plaintiff, a newly formed LLC, under which Ms. Marko also served as corporate designee.  (*Id.*)  FAF did not require a payment from Plaintiff for the assignment of the notes.  (*Id.*)  Neither FAF nor Plaintiff registered with or held licenses from any governmental body.  (*Id.*)

In 2018, Venture filed for bankruptcy.  (*Id.*)  Plaintiff did not receive any distribution from the bankrupt estates because of its status as a general unsecured creditor.  (*Id.* at 10).

### iii. Plaintiff files Current Action against Venture's Shareholders

On February 14, 2020, Plaintiff filed suit in this action, contending that Janelle Miller, David Miller, Richard Miller, and Janell Miller are guarantors of the notes under which Plaintiff claims it is owed monies.  (*Id.*)

On July 15, 2021, Defendants moved for summary judgment on all of Plaintiff's continuing guarantee claims, arguing the notes Defendants allegedly guaranteed to Plaintiff are unenforceable because neither FAF nor Plaintiff registered as brokers under Section 15(a)(1) of the U.S. Securities Exchange Act ("the Exchange Act") and, therefore, the loan agreements and subsequent notes between Defendants and FAF were void pursuant to Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc ("Section 29(b)").  (Doc. 54 at 2).  Plaintiff filed a Cross Motion for Summary Judgment on Counts 3, 4, 7 and 8 in Plaintiff's

Complaint.[7] (Doc. 61).

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## III. Discussion

Defendants argue they are entitled to summary judgment because the notes Defendants allegedly guaranteed to Plaintiff are unenforceable. Defendants claim neither FAF nor Plaintiff registered as brokers under Section 15(a)(1) of the Exchange Act and therefore the loan agreements and the alleged guarantees are void under Section 29(b).

---

[7] Plaintiff's Complaint omits a Count 2. Although Plaintiff does not move for summary judgment on its breach of contract claim (Count 1), it also fails for the reasons discussed herein.

- 4 -

(Doc. 54 at 2).  Defendants thus contend Plaintiff has no right to recover any sum from Defendants and summary judgment should be entered.  (*Id.*)

In its Response, Plaintiff first argues Defendants waived their affirmative defenses by not specifying them in their Answer.  (Doc. 69 at 3).  Second, Plaintiff contends the securities laws do not apply to the loan agreements at issue here because the laws are not applicable to the lending of funds.  (*Id.* at 7).  Finally, Plaintiff argues the statute of limitations under Section 29(b) bars Defendants' defense that the contract is void.  (*Id.* at 8).

**A.  Affirmative Defenses**

Plaintiff first argues Defendants waived their defenses when they failed in their Answer to allege the notes were void or unenforceable under securities laws; allege the notes were unenforceable due to a lack of consideration; or allege the assignment by FAF was unenforceable due to a failure of consideration.  (Doc. 69 at 3).

"[A]ffirmative defenses may be stated in 'general terms' and need only provide the plaintiff with "fair notice" of their nature."  *Loi Nguyen v. Durham Sch. Servs., L.P.*, 358 F. Supp. 3d 1056, 1057 (C.D. Cal. 2019).  Under the fair notice standard, "the defendant need only 'state the nature and grounds for the affirmative defense.'"  *Id.* at 1059 (citation omitted).  "In the absence of showing of prejudice, affirmative defense may be raised for the first time at summary judgment."  *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

Defendants' Answer states, "Plaintiff has no claim for the enforcement of any note or guaranty agreement against Answering Defendants under any statute or the common law of Arizona."  (Doc. 30 at 10).  Defendants further allege, "First American Fund Inc.'s assignment of interest to Plaintiff in the alleged notes and/or guaranty agreements is invalid and unenforceable."  (*Id.*)  Defendants argue these affirmative defenses provided adequate notice to Plaintiff that Defendants would seek discovery to determine whether the guarantees violated a "statute or the common law of Arizona" or whether "First American Fund Inc.'s assignment of interest to [Plaintiff] in the alleged notes and or guaranty

- 5 -

agreements is invalid and enforceable." (Doc. 71 at 3).

The Court finds Defendants provided fair notice to Plaintiff of their affirmative defenses. Indeed, certain facts supporting Defendants' arguments that the guarantees were not enforceable against them could not have been found until the conclusion of written discovery and depositions. Moreover, even if Plaintiff was not on notice of Defendants' defenses, Defendants may nonetheless raise affirmative defenses for the first time in a Summary Judgment Motion. *See Camarillo*, 998 F.2d at 638. Nowhere in Plaintiff's Response does it argue how it suffered prejudice from Defendants' affirmative defenses. Plaintiff simply asserts the defenses were waived and the Court "need not consider any of the allegations made by Defendants." (Doc. 69 at 4). Absent a showing of prejudice from Plaintiff, the Court finds Defendants may raise these affirmative defenses and indeed Plaintiff was on fair notice of them regardless.

**B. Notes and Guarantees under the Securities Exchange Act**

Defendants argue the note agreements between Defendants and FAF are void under Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc, because neither FAF nor Plaintiff registered as brokers or dealers under Section 15(a)(1) of the Exchange Act, 15 U.S.C.A. § 78o(a)(1). (Doc. 54 at 11).

Section 15(a)(1) of the Exchange Act requires any broker or dealer transacting any securities to be registered. Section 29(b) of the Exchange Act declares every contract made in violation of Section 15(a)(1) void. Defendant argues that FAF was a "dealer" under Section 15 because it engaged in the recurring practice of transacting convertible notes, and, therefore, its failure to register as a dealer at the time the note was issued, or thereafter, renders each of the notes at issue void and unenforceable pursuant to Section 29(b). (Doc. 54 at 12).

In Response, Plaintiff argues, without citation to authority, "it is not the lending of money which is subject to regulation," but rather, "the offer to sell an interest as a promissory note." (Doc. 69 at 7). Under this theory, Plaintiff claims Venture neither purchased nor sold funds and thus the securities laws do not apply. (*Id.* at 8). Instead,

- 6 -

1  Plaintiff says FAF was engaged in the business of loan making, which is not subject to
2  securities laws. (*Id.*)  Even if the notes are securities and the Exchange Act does apply,
3  Plaintiff argues it did not have actual knowledge it was in violation of securities laws when
4  it made the loans to Venture. (*Id.* at 8).  Finally, Plaintiff argues the statute of limitations
5  under 15 U.S.C. § 78cc(b) bars Defendants' defense that the contract is void. (*Id.*)
6        The Court must first determine whether the notes at issue here involved securities
7  as defined under securities laws and case law.

      **i.   Definition of a Security**

9        Section 3(a)(10) of the Exchange Act defines a security as, among other terms, an
10  "investment contract" and "notes." 15 U.S.C. § 78c(a)(10); *Sec. & Exch. Comm'n v.*
11  *Mogler*, 2020 WL 1065865, at *3 (D. Ariz. Mar. 5, 2020).  The Ninth Circuit uses a three-
12  part test to determine whether a particular scheme fits within the definition of an investment
13  contract: "(1) an investment of money; (2) in a common enterprise, evidenced by either
14  horizontal or vertical pooling; (3) with an expectation of income or profits to be derived
15  solely from the efforts of a promoter or a third party." *Id.* at 4.  A common enterprise is
16  further defined as "an enterprise common to an investor and the seller, promoter, or some
17  third party (vertical commonality) or an enterprise common to a group of investors
18  (horizontal commonality)." *Id.* (citation omitted).
19        The Court finds the loans and subsequent notes that were paired by FAF which gave
20  rise to this civil action were securities under Section 3(a)(10) of the Exchange Act.  Here,
21  there is no genuine dispute that FAF identified lenders and solicited funds, which it loaned
22  borrowers who, in turn, executed promissory notes in favor of FAF, thus satisfying the first
23  prong.  As to the second prong, horizontal commonality describes the relationship shared
24  by two or more investors who pool their fortunes in reliance on the profits of a single
25  common enterprise. *Hocking v. Dubois*, 839 F.2d 560, 566 (9th Cir. 1988).  FAF's Vice
26  President, Ms. Marko, testified that the company would locate "private money lenders . . .
27  who would loan money" to borrowers at high interest rates and that those lenders included
28  "various investors, private people, and also some pensions." (Doc. 54-1 at 7).  Several of

the borrowers had multiple private money lenders. (*Id.* at 10). FAF would then collect the interest payments from the borrowers and make a *pro rata* determination of the interest due to each lender. (*Id.*) Accordingly, the Court finds that no reasonable juror could find that there was no pooling of funds for profit of a sole enterprise in a horizontal commonality.

As to the third prong, FAF's sole source of profit arose from the difference between the higher interest rates it charged the borrowers and the lower interest rates it paid to the private money lenders. Ms. Marko states, "[FAF] would get one or two percent of the payment . . . if the loan was for 10 percent, the investor would get eight and FAF would take two." (*Id.* at 7). The Court thus finds no reasonable juror could find that the third prong of the test for an investment contract is not met.

Thus, the Court finds the notes here involved securities under Section 3(a)(10) of the Exchange Act.

### ii. Plaintiff's Failure to Register as a Broker or Dealer under Section 15(a)(1) of the Exchange Act

In their first affirmative defense, Defendants argue that the note agreements between Defendants and FAF are void pursuant to Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc, because both FAF and Plaintiff failed to register as broker-dealers, as required by Section 15 of the Exchange Act, 15 U.S.C. § 78o(a)(1).

#### a. Registration Requirement Under Section 15(a)(1) of the Exchange Act

Section 15 of the Exchange Act states, "[i]t shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered . . . ." 15 U.S.C. § 78o(a)(1).

The Exchange Act broadly defines a broker as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). The term "security" includes any "note." § 78c(10). To determine whether an entity must

register under § 78o(a)(1), courts consider "whether the individual may be characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution." *Mogler*, 2020 WL 1065865, at *9 (citation omitted).

When the performance of any contract violates Section 15(a)(1) of the Exchange Act, the contract "shall be void" and unenforceable under Section 29(b) of the Exchange Act. *See* § 78cc(b).[8]

It is undisputed that FAF and Plaintiff never registered as brokers or dealers with the SEC. (Doc. 54-1 at 12). The Court finds FAF and Plaintiff were required to register with the SEC because they were "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Indeed, both FAF and Plaintiff negotiated and administered the notes through interstate commerce because Venture resided in Pennsylvania and the private money lenders resided in Florida and Texas. (Doc. 54-1 at 20).

Plaintiff raises no meaningful arguments why it or FAF is exempt from registering as broker-dealers under Section 15(a)(1) of the Exchange Act. Instead, Plaintiff argues "it is not the lending of money which is subject to regulation," but rather, "the offer to sell an interest as a promissory note." (Doc. 69 at 7). However, in addition to engaging in loan making, Plaintiff also engaged in the transacting of promissory notes. 15 U.S.C. § 78(a)(13)–(14) defines a purchase or sale as any means of acquiring or disposing of a contract. For security-based swaps, "assignment" is listed as a specific method of acquisition or disposal. 15 U.S.C. § 78(a)(13)–(14). The law's contemplation of an assignment as a method of purchase or sale demonstrates that FAF's assignment of a promissory note to Plaintiff would be subject to regulation under securities laws. Here, the facts are undisputed that FAF assigned the notes to Plaintiff. (Doc. 54-1 at 54). The Court

---

[8] Section 29(b) of the Exchange Act states, "[e]very contract made in violation of any provision of this chapter . . . shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation . . . ." 15 U.S.C. § 78cc(b).

therefore finds Section 15(a)(1) of the Exchange Act applies to FAF's loan making and the subsequent note assignment to Plaintiff. Accordingly, unless Plaintiff can show otherwise, the notes are void under Section 29(b) of the Exchange Act because it is undisputed that neither FAF nor Plaintiff ever registered as brokers. (Doc. 54-1 at 12).

### b. Estoppel under Section 29(c) of the Exchange Act

Section 29(c) states that a defendant cannot avoid collection on notes under the statute if a debtholder has acquired the debts in "good faith," "for value," and "without actual knowledge of a violation" . . . ." 15 U.S.C. § 78cc(c).[9]

To skirt voidability under Section 29(b), Plaintiff argues that under Section 29(c), it acquired the notes without any knowledge that it or FAF were required to register under Section 15(a)(1). Plaintiff contends the loans FAF made to Venture are only voidable under Section 29(b) of the Exchange Act if "the person making the loan [has] actual knowledge that the making of the loan is a violation of securities laws."[10] (Doc. 69 at 8). Plaintiff cites to nothing in the record to support this position but nonetheless argues that summary judgment is inappropriate because the record does not reflect FAF had knowledge that the loans it made to Venture were in violation of any provision of the federal securities laws. (*Id.*) During her deposition, Ms. Marko, FAF's corporate designee, testified that upon advice of counsel, FAF was told it did not need to register with any regulatory bodies. (Doc. 54-1 at 12). In light of her testimony, there appears to be a genuine dispute of material fact as to whether FAF knew it was required to register as a broker.

FAF's lack of knowledge, however, does not dispose of Defendants' defense.

---

[9] Section 29(c) of the Exchange Act states, "Nothing in this chapter shall be construed . . . to afford a defense to the collection of any debt or obligation . . . by any person who shall have acquired such debt [or] obligation . . . *in good faith for value and without actual knowledge of the violation of any provision of this chapter* or any rule or regulation thereunder affecting the legality of such debt [or] obligation . . . ." 15 U.S.C. § 78cc(c) (emphasis added).

[10] Plaintiff does not specify which provision of Section 29(c) it relies on. The Court will assume it relies on the second provision because Plaintiff is the current debtholder of the notes through FAF's assignment and Defendants are raising Section 29(b) defensively.

Indeed, by its own terms, Section 29(c)'s requirements are that the party asserting a lien or debt have acquired it (1) in good faith; (2) for value; and (3) without actual knowledge of a violation. *See* 15 U.S.C. § 78cc(c); *see also Zions First Nat. Bank, N.A. v. Bailey*, 946 F.2d 902 (10th Cir. 1991) (unpublished) ("The only requirements of [Section 29(c)(2)] are that the party asserting a lien or debt have acquired it (1) in good faith; (2) for value; and (3) without actual knowledge of a violation."). Plaintiff acquired the debt represented by Venture's notes and is thus the debtholder. For Plaintiff to raise estoppel under Section 29(c)(2), Plaintiff must meet all of Section 29(c)'s requirements.

Here, Plaintiff only shows a dispute exists as to FAF's knowledge of its failure to register.[11] Plaintiff ignores or leaves otherwise unaddressed the two additional requirements under the statute. Plaintiff made no arguments about whether the debt was acquired in good faith and does not dispute that it did not acquire the debt "for value." In fact, by Plaintiff's own admission, the notes were not acquired for any value. During her deposition, counsel asked Ms. Marko the following:

> Q. And it says below the heading, "For value received, the undersigned hereby grants" so on and so forth "to AZARDEN, LLC, all beneficial interest under all the promissory notes identified in Exhibit A attached."
> What was the value received from First -- by First American from AZARDEN?
> A. There was no value received.

(Doc. 54-1 at 56).

In its Response, Plaintiff asserts "there is no basis" for the argument that no value was received and instead argues FAF's assignment of the notes to Plaintiff constituted an enforceable gift and therefore no payment was required. (Doc. 69 at 5). The Court rejects this argument for three reasons.

First, Plaintiff's argument that the legal requirements of an enforceable gift are satisfied under Arizona law misses the point. According to the plain language of the statue,

---

[11] Plaintiff does not point to anything in the record to support its lack of knowledge that the notes FAF assigned to Plaintiff were in violation of securities laws.

- 11 -

to afford a defense to the collection of any debt, the debt must have been acquired for value. Second, the plain language of the assignment agreement, which says "For Value Received the undersigned hereby grants, bargains, assigns, sells and transfers, and sets over to AZARDEN, LLC," does not evidence an intent to gift the notes to Plaintiff. (Doc. 1 at 18). To the contrary, the agreement suggests the assignment was made for value. Third, notwithstanding this language, Plaintiff then admits during its deposition that no value was received for the assignment. (Docs. 1; 54-1 at 18, 56). It is undisputed that Plaintiff paid nothing for the assignment of the loans from FAF, despite that these loans would provide thousands of dollars of monthly revenue. (Doc. 1 at 18–19). Finally, as Defendants point out, Plaintiff could have provided tax returns or other documents to prove that the assignment agreement was a gift. Plaintiff has not.[12] The Court therefore finds, as a matter of law, that Plaintiff cannot invoke estoppel under Section 29(c)(2) because Plaintiff did not acquire the notes at issue here for value.

### iii. Statute of Limitations under Section 29(b) of the Exchange Act

Plaintiff next argues Defendants' defenses are barred by the statute of limitations under Section 29(b). Specifically, Plaintiff argues Defendants must have asserted their defense within one year after the discovery of such violation and within three years of the violation. *See* 15 U.S.C. § 78cc(b). The most recent loan made to Venture was in 2016. (Doc. 54-1 at 54). Plaintiff thus argues the time has lapsed for raising this defense. (Doc. 69 at 9).

The Court rejects Plaintiff's argument because the statute of limitations under § 78cc(b) applies only to an "action" alleging a violation of § 78o(c)(1)–(2). Here, Defendants have not raised any affirmative claims under § 78o(c)(1)–(2), which concerns the use of manipulative and deceptive devises. To the contrary, the violation at issue here is § 78o(a)(1), which concerns broker-dealer registration requirements. The Court therefore rejects Plaintiff's argument that § 78cc(b) bars Defendants' defenses. *See Lawrence v. Richman Grp. of Connecticut, LLC*, 407 F. Supp. 2d 385, 389 (D. Conn. 2005)

---

[12] As this Court noted in its Scheduling Order, "[n]o party shall presume the Court will hunt for facts or theories that might support either party's case." (Doc. 35 at 5).

("[T]he plain language of [Section 78cc] applies only to 'actions maintained in reliance upon th[e] subsection,' i.e., affirmative actions for rescission, not to defenses raised.").

Because there is no dispute of material fact as to whether FAF and Plaintiff registered as broker-dealers, the Court finds FAF's assignment of the promissory notes to Plaintiff violated Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1) and is thus void under Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b). *See Lawrence*, 407 F. Supp. 2d at 391 (finding the parties contract violated Section 15(a)(1) of the Exchange Act because plaintiff was not a registered broker and thus void pursuant to Section 29(b) of the Exchange Act). The Court will accordingly grant summary judgment in Defendant's favor.

Because the Court concluded Plaintiff and FAF violated Section 15(a)(1) of the Exchange Act by failing to register as brokers and therefore FAF's assignment of the notes to Plaintiff were void under Section 29(b) of the Exchange Act, the Court need not address the other arguments raised by Defendants under the Arizona Securities Act.

**IV.  Conclusion**

Because the Court will grant Defendant's Motion for Summary Judgment on all claims raised by Plaintiff, it necessarily follows that the Court will deny Plaintiff's Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 61) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall dismiss David Miller and Janelle Miller from this action.

…

…

…

…

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 30th day of March, 2022.

_____
Honorable Diane J. Humetewa
United States District Judge